*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-174

NOVEMBER TERM, 2015

| | | |
|---|---|---|
| Langrock Sperry & Wool, LLP | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Chittenden Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| Kenneth Felis | } | DOCKET NO. 149-2-13 CnCv |

Trial Judge: Helen M. Toor

In the above-entitled cause, the Clerk will enter:

Defendant Kenneth Felis appeals from a judgment in favor of plaintiff Langrock Sperry & Wool, LLP, his former law firm, on his counterclaims for malpractice, breach of contract, consumer fraud, and intentional infliction of emotional distress. We affirm.

This is the third appeal to reach the Court arising out of this lengthy and contentious divorce proceeding. In Felis v. Felis, 2013 VT 32, 193 Vt. 555, husband Kenneth Felis appealed certain provisions of the trial court's exhaustive sixty-four page divorce judgment providing for parent-child contact, awarding nominal maintenance and attorney's fees to wife, and dividing the marital estate. We affirmed the visitation, maintenance, and attorney's fee provisions, but reversed the property award based on an erroneous application of the "dissipation doctrine," and remanded for further proceedings. Id. ¶¶ 18, 25. Following our remand, the trial court issued a modified property award which we subsequently affirmed, rejecting husband's claim that the court exceeded the scope of the remand and violated the law-of-the-case doctrine. Felis v. Felis, No. 2013-448, 2014 WL 3714663, at *1 (Vt. May 1, 2014) (unpub. mem.), https://www.vermontjudiciary.org/UPEO2011Present/eo13-448.pdf.

In April 2012, while his initial appeal was pending, husband (hereafter Felis) terminated his representation by the firm of Langrock Sperry & Wool (LSW) and Thomas Carlson, the attorney with the firm who had principally represented him throughout most of the divorce proceeding. In February 2013, LSW filed this lawsuit against Felis for attorney's fees due and owing. Felis counterclaimed for violation of the Consumer Protection Act and intentional infliction of emotional distress, and later added counterclaims for breach of contract, violation of the covenant of good faith and fair dealing, malpractice, promissory estoppel, and additional violations of the Consumer Protection Act.

In August 2014, LSW moved for summary judgment on all of the claims and counterclaims. In March 2015, the court issued a written decision granting the motion, and subsequently entered a final judgment awarding LSW past due attorney's fees totaling $67,546.72 plus interest, and costs. This appeal by Felis followed.

We review a summary judgment employing the same standard as the trial court. Summary judgment may be granted only if, crediting the non-moving party with the benefit of all reasonable doubts and inference, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Bixler v. Bullard, 172 Vt. 53, 57 (2001).

Felis first contends that the trial court erred in granting summary judgment on his counterclaim for breach of contract. The claim was predicated upon an alleged modified agreement with LSW not to seek payment until the divorce case was complete. The trial court here observed that, whatever the merits of the claim, the case was now complete, and Felis did not dispute that he was billed for at least $65,000 in fees that had not been paid. Accordingly, it found no basis for the breach-of-contract claim. Although Felis argues on appeal that he was "entitled to resolution of this factual dispute in his favor for purposes of summary judgment," he has not shown that any material fact remained in dispute, or that the court's ruling was erroneous.

Felis next asserts that LSW was not entitled to summary judgment on the counterclaim for professional malpractice. The malpractice claim enumerated a number of allegedly negligent acts by attorney Carlson: that he had negligently advised Felis that an amended temporary order did not allow Felis to pay his legal fees from the marital estate, but rather that such fees must be paid from the living expenses allotted to Felis by the trial court; failed to seek a clarification of the amended temporary order from the trial court; improperly informed opposing counsel that Felis had withdrawn $50,000 from the marital estate for payment of attorney's fees; failed to call as a witness a psychiatrist who had conducted a family evaluation; improperly informed Felis that a failure to pay his legal fees would result in substandard legal representation; and misinformed Felis as to when the living expenses allowed under a temporary order would cease.

In evaluating the claims, the trial court here reviewed the general requirements for establishing a legal malpractice claim as set forth in Estate of Fleming v. Nicholson:

> In a legal malpractice action, a plaintiff must prove that the attorney was in fact negligent and that this negligence was the proximate cause of the plaintiff's injury. Generally, negligence by professionals is demonstrated using expert testimony to: (1) describe the proper standard of skill and care for that profession; (2) show that the defendant's conduct departed from that standard of care; (3) show that this conduct was the proximate cause of plaintiff's harm. If the alleged negligent conduct is a matter of judgment unique to that profession, the above elements must be established by expert testimony to assist the trier of fact in determining negligence.

2

168 Vt. 495, 497 (1998) (citations omitted). Although Felis produced an opinion by an attorney that Carlson's actions fell below the standard of care, the attorney expressed no opinion on whether the conduct was the proximate cause of any damages. Instead, Felis relied on the limited exception for cases where "common knowledge and experience" are sufficient to find the elements of negligence. Id. at 498. The trial court found the exception to be inapplicable, however, observing that the claims arose out of "an incredibly complicated divorce" which had generated a lengthy and complex trial court decision, and that common knowledge and experience were insufficient to determine whether counsel's actions had proximately harmed Felis.

Felis renews his claim on appeal that expert evidence was unnecessary to demonstrate that counsel's alleged negligence in three specific areas was the proximate cause of harm. The argument is unpersuasive. As to the first claim, whether Felis would have benefited by paying his attorney's fees from the marital estate requires a complex analysis as to the potential impact of such withdrawals on the family court's subsequent property division which is not, as the trial court here observed, readily ascertainable from common knowledge and experience. Similarly, the impact, if any, of Carlson's decision not to submit the psychiatrist's forensic evaluation requires a careful analysis of the report's findings and conclusions in light of the record evidence as a whole, an analysis not readily subject to common knowledge and experience.[1] Nor, finally, is it self-evident that Felis was harmed by counsel's allegedly negligent advice that monthly payments for living expenses under a temporary order would cease when the court issued its final order. See Poplaski v. Lamphere, 152 Vt. 251, 254-55 (1989) (noting that summary judgment is mandated where party "fails to make a showing sufficient to establish the existence of an element essential" to the case). Accordingly, we find no error in the court's summary judgment on this claim.

Felis further asserts that LSW was not entitled to summary judgment on his claim for intentional infliction of emotional distress. Felis alleged that he had struggled with issues relating to his physical and emotional health during the divorce, that attorney Carlson was aware of those issues, and that Carlson engaged in willful and outrageous behavior by sending Felis an email while Felis was under stress "demanding immediate payment," threatening that nonpayment would result in diminished legal representation, alleging improper conduct by Felis, and threatening to disclose such conduct.[2] Observing that the standard for demonstrating

---

[1] In the divorce judgment itself, the court noted that there was "little objective evidence, other than the less-than-persuasive personal views of the parties themselves," to determine the effect, if any, of the forensic evaluation.

[2] The email read as follows:

> Ken, I need to be honest about the fact that I am concerned about the turn of the conversation the other day. I want to be your lawyer. I am not backing off of this mission even a fraction of an inch. I need your help, though, both to pay what you can and to honor the effort we have put in on your behalf and you have always appreciated. The 200k distributions were your idea back in January. We proposed them and got an agreement. Of course, you

3

intentional infliction of emotional distress requires actions "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct," Cate v. City of Burlington, 2013 VT 64, ¶ 28, 194 Vt. 265, the trial court here found that the facts did not remotely rise to this level**.**

As noted, liability for intentional infliction of emotional distress "can arise only from conduct so outrageous and extreme as to go beyond all possible bounds of decency," and "[i]t is for the court to determine as a threshold question whether a jury could reasonably find that the conduct at issue meets this test." Jobin v. Mcquillen, 158 Vt. 322, 327 (1992) (quotation omitted). Although Felis contends that the email evinces an extreme abuse of a fiduciary relationship, particularly in light of his known susceptibility to emotional distress, we find nothing amiss in the trial court's conclusion that the email was generally "gentle" in nature, contained no threats, and did not rise to the level of actionable outrageous conduct.

Finally, Felis asserts the trial court erred in granting summary judgment on his claims that LSW violated the Consumer Protection Act by failing to disclose (1) that LSW's practice of billing in quarter-hour increments would result in his being charged for time not spent on his case; and (2) that less than one percent of attorney Carlson's practice involved child custody cases. As to the first claim, the parties' Representation Agreement provided, in relevant part, that LSW "will keep records of time spent to the nearest quarter of an hour, and will bill a minimum of one quarter of an hour for all activity, including each telephone conversation and all correspondence and email." Felis claimed that the agreement failed to inform him that he might be billed fifteen minutes for a telephone call that took only a few minutes. The trial court concluded that the agreement was unambiguous, and plainly and expressly stated that a "minimum of quarter of an hour" would be billed for all activity, including telephone calls. Although Felis asserts that the phrase "for all activity" is somehow ambiguous and does not

---

also withdrew 40k or so for legal fees back in December. You are correct that I was uncomfortable with that as a matter of strategy but you did it and it seems to have passed some kind of muster, at least for so long as the other side thinks you used it for legal fees. Of course I would never say anything about it, but if I were them in the child support hearing, you can bet I would ask you about it and of course you would have to tell the truth. Meanwhile, I am really struggling with the idea that we would have to wait another year or more to get paid, for work we did more than a year ago, and dig our hole even deeper, when the ability to pay is clearly within reach. Thank you for thinking hard about that. I believe I am just asking for some fairness. Please take the time to reflect and talk to the important people in your life about how to proceed here. Next week is fine for that too, although we got the transcript of trial yesterday so the clock is ticking on the brief. I expect that's a 20k or so effort, and I cannot ask my partner Susan to work in it if we are up in the air about getting paid. I will do it if she doesn't, but I know you would be better served if she writes it.

necessarily imply that fifteen minutes will be billed for each task, we find no support in the text or in any other evidence cited by Felis for the argument. Accordingly, we find no error.

In his other fraud claim, Felis alleged that Carlson had represented that a large percentage of his practice involved high-asset divorce cases, but failed to inform Felis that he did not have an active practice involving parental rights and responsibilities. The trial court granted summary judgment on the basis that Felis had neither alleged nor shown any damage as a result of the alleged omission. Although Felis asserts otherwise in his brief on appeal, he provides no citations to the record or evidence that he was harmed in the custody dispute by Carlson's alleged omission.[3] Accordingly, we find no error, and no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
James L. Morse, Associate Justice (Ret.),
Specially Assigned

---

[3] Felis's expert attorney offered no opinion on whether Felis had been harmed in any way by Carlson's failure to affirmatively inform him about the number of custody cases that he had litigated.